IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA J. BELOW, by his guardian, DEBRA BELOW, CHARLIE ELIZABETH BELOW, a minor by her Guardian ad Litem, DANIEL A. ROTTIER, and PATRICK JOSHUA BELOW, a minor by his Guardian ad Litem, DANIEL A. ROTTIER,

    Plaintiffs,

and

DEAN HEALTH PLAN, INC.,

    Involuntary Plaintiff,

and

STAR BLUE BELOW-KOPF, by her Guardian ad Litem, TERESA K. KOBELT,

    Intervening Plaintiff,

 v.

YOKOHAMA TIRE CORPORATION, *et al.*,

    Defendants.

OPINION AND ORDER

15-cv-529-wmc

---

  This products liability lawsuit arises out of a single vehicle accident on Interstate 94 near Lincoln, Wisconsin, that injured plaintiff Joshua Below on September 14, 2013. Plaintiffs allege that the accident was caused by a tread separating on a defective tire manufactured by defendants (collectively, "Yokohama"). Now before the court is

defendants' motion for partial summary judgment on plaintiffs' failure to warn claim.[1] (Dkt. #53.) For the reasons explained below, defendants' motion will be granted in part and reserved in part.

UNDISPUTED FACTS[2]

On September 14, 2013, plaintiff Joshua Below was driving a 2005 GMC Sierra pickup truck on Interstate 94 near Lincoln, Wisconsin, when the tread of his right rear tire detached, causing him to lose control of his vehicle and crash. The tire that failed was a "Geolandar H/T-S," which was manufactured by Yokohama in 2006 and has a size of LT285/75R16 ("the tire").[3]

Joshua purchased the pickup truck used from a local automobile dealer in September of 2007, without knowing when the allegedly defective tire was purchased, from whom it was purchased, or who installed it. Plaintiffs now contend that the tire was installed in 2007 by Huston Motors in Florida, but they offer no admissible evidence in support.

---

[1] In response to the court's order dated August 24, 2015, defendants filed an amended notice of removal containing allegations of the citizenship of defendant Yokohama Tire Manufacturing Virginia, LLC (dkt. #6) that are sufficient to establish complete diversity of the parties, and given the amount at stake, that the court has subject matter jurisdiction under 28 U.S.C. § 1332.

[2] The court finds the following facts material and undisputed unless otherwise noted. The facts are drawn from the parties' proposed findings of fact and responses.

[3] Plaintiffs assert that the tire's size was instead 285/75R16, but in support merely cite to their expert's report, which confirms that "[t]he failed tire size was LT285/75R16." (Aff. of James J. Kriva Ex. A [hereinafter "Derian Report"] (dkt. #70-1) at 4.) This tire size refers to a "light truck" tire with a "nominal section width" of 285 millimeters from sidewall to sidewall, an aspect ratio of the sidewall height to the nominal section width of 75%, a "radial" construction of the fabric carcass, and designed to fit a rim diameter of 16 inches. *See* "Tire Code," Wikipedia, https://en.wikipedia.org/wiki/Tire_code (last visited Feb. 6, 2017).

2

The parties agree that: (1) the tire was mounted on a rim that was too narrow for its size; and (2) Yokohama warned consumers against mounting tires on rims that are not approved for the size of the tire. Nevertheless, plaintiffs contend that Yokohama had a duty to warn that if the tire *is* mounted on a rim that is too narrow, then the tire should be inflated to a lower pressure. Plaintiffs also argue that Yokohama had a duty to warn that the tire does not fit on most, if not all, original equipment wheels. The court addresses both of plaintiffs' failure to warn theories below.

## OPINION

The purpose of summary judgment is to determine "whether there is the need for a trial -- whether, in other words, there are any genuine factual disputes that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A manufacturer has a duty to warn about dangers it knows or should know are associated with its products. *See Lemmerman v. Blue Cross Blue Shield of Wis.*, 713 F. Supp. 2d 791, 811 (E.D. Wis. 2010). To prevail on their failure to warn claim, whether under

a strict liability or negligence theory, plaintiffs must establish four elements: "(1) existence of a duty to warn; (2) proof of a failure to warn adequately; (3) proof of causation injury; and (4) actual damages resulted from the injury." *Id.* at 810-11 (citing *Kessel v. Stansfield Vending, Inc.*, 2006 WI App 68, ¶ 15, 291 Wis. 2d 504, 714 N.W.2d 206 (Ct. App. 2006)). Typically, the question whether a warning was adequate is for the jury, but "the court can find a warning was adequate where 'no reasonable jury, properly instructed, could find [defendants] [were] negligent.'" *Lemmerman*, 715 F. Supp. at 811 (quoting *Kurer v. Parke, Davis & Co.*, 2004 WI App 74, ¶ 24, 272 Wis. 2d 390, 679 N.W.2d 867 (Ct. App. 2004)).

I. **Lower PSI for Narrow Rims**

   A. **Adequacy of Warning**

   Yokohama argues that plaintiffs cannot satisfy the second element of their failure to warn claim because it expressly warned against mounting the tire to a rim that is narrower than prescribed. Specifically, Yokohama provides safety warnings on the sidewall of its tires, as well as in its published "Fitment Guide." (Defs.' Reply PFOF (dkt. #65) ¶ 11.) Yokohama's 2005 Fitment Guide states as follows: "**Warning:** Never mount a tire on a rim width that is not approved!" (Aff. of James J. Kriva Ex. J (dkt. #57-10) at ECF 10 (emphasis in original).) It also states: "Always stay within the approved rim width range for a tire." (*Id*. at ECF 13.) The Fitment Guide further provides a reason for the warnings by way of an example:

> For example, a P255/50R16 tire is approved to be mounted on wheels ranging from 7.0" to 9.0". Past experience and engineering practice has shown that *wheel widths outside these*

4

> *ranges will stress the tire in a manner that may result in poor service and potential tire failure*.

(*Id.* at ECF 10 (emphasis added).)

Here, plaintiffs concede that the tire at issue was mounted on a wheel rim that was 6.5 inches wide, even though "[t]he published wheel width range for this size tire is 7.5 to 9.0 inches." (Derian Report (dkt. #70-1) at 4.) Still, plaintiffs argue that Yokohama should have included a further warning that "[w]hen a 285/75R16 tire is not fitted to a wider wheel, the tire inflation should be changed from the factory 55/80 psi for front and rear tires to 40/60 psi."[4] (Pls.' Opp'n Br. (dkt. #60) at 3.) According to plaintiffs, Yokohama should have provided this particular warning because it was foreseeable the tire would likely be fitted on a narrower rim given that: (1) it is common that pickup truck owners install oversized tires to "improve the rugged looks of the vehicle"; (2) the recommended rim width "is not used as original equipment on any pickup truck"; and (3) despite being mounted on rims that were too narrow, the tires "appear to fit and hold air." (*Id.* (citing Pls.' PFOF (dkt. #62) ¶¶ 1-3, 7).)

In particular, directing the court to *Tanner v. Shoupe*, 228 Wis. 2d 357, 596 N.W.2d 805 (Ct. App. 1999), plaintiffs argue that inflating the tire to a pressure too high for the narrower-than-approved rim constituted a "hidden danger," requiring a further warning. In *Tanner*, the Wisconsin Court of Appeals reversed the trial court's grant of a directed verdict to the defendant, holding that there was sufficient evidence for a reasonable jury to find that a general warning consisting of "danger, explosive gases" on

---

[4] Defendants dispute plaintiffs' assertion that the tires should have been inflated to 40/60 psi, but that dispute is immaterial for summary judgment purposes for reasons explained below.

an automobile battery "was not adequate to warn users that the battery could explode if the vent caps were pounded on or otherwise damaged." *Id.* at 378. The *Tanner* court explained that the general warning was inadequate, or at least a reasonable jury could so find, because it was foreseeable that consumers would misuse the batteries by banging on the caps in light of testimony at trial that it was difficult to get the vent caps to fit and that consumers often remedied this problem by pounding on the caps to align them properly. *Id.* at 377. Moreover, the evidence showed that the danger of explosion due to hammering the vent caps was not obvious, since many people wrongly believe that a battery is strong enough to sustain hits from a hammer without any damage. *Id*.

The court agrees with Yokohama that *Tanner* is readily distinguishable with respect to plaintiffs' psi theory. Most importantly, unlike *Tanner*, Yokohama warned against the specific *misuse* of the tire that plaintiffs allege caused Joshua's injuries -- installing it on a wheel that was too narrow. Yokohama also warned of the specific *danger* that could (and plaintiffs alleged did) result from that misuse -- tire failure. Nor does *Tanner* support plaintiffs' broader assertion that a manufacturer must not only warn against the specific danger presented by a foreseeable misuse of its product, but also provide yet *another* warning as to how to minimize that danger in the event its specific warning goes unheeded. Indeed, such a warning would make little or no sense, since providing it could reasonably be read by the consumer as implicitly endorsing the misuse, or at least suggesting that the risk of misuse could be reduced to an acceptable probability or danger (or both) by underinflating the tires. Because Yokohama warned

6

about the precise danger caused by misuse of the tire as occurred here, no reasonable jury could find that an additional psi warning was appropriate, much less required.

    B. Causation

Plaintiffs' claim concerning defendants' failure to warn about a lower psi fails for a related, but separate reason. As Yokohama points out, plaintiffs cannot establish causation. "A plaintiff who has established both a duty and a failure to warn must also establish causation by showing that, if properly warned, he or she would have altered behavior and avoided injury." *Kurer v. Parke, Davis & Co.*, 2004 WI App 74, ¶ 25, 272 Wis. 2d 390, 679 N.W.2d 867 (Ct. App. 2004). Therefore, to show that an inadequate warning was the proximate cause of Joshua's injuries, plaintiffs must present "proof that a more complete or explicit warning would have prevented" the misuse. *Id.*

Here, plaintiffs cannot establish causation because they can offer *no* proof that: (1) the (unknown) individual who installed the tire would have followed a warning to inflate the tire to a lower psi, any more than the warning against installing it on a wheel that was too narrow; *or* (2) Joshua himself ever checked whether the tire was fitted to a wheel of the proper width, such that he might have avoided injury by inflating it below the normal psi. Plaintiffs again point to *Tanner* for the proposition that Joshua's failure to read Yokohama's warnings does not compel summary judgment, which may be so as far as it goes, but in *Tanner*, unlike here, plaintiff's expert opined that the battery explosion causing injury was in turn likely caused by an earlier user of the battery pounding on a vent cap and creating a leak. 228 Wis. 2d at 379.

That is why the Wisconsin Court of Appeals in *Tanner* rejected defendant's principal argument that proof of plaintiff's failure to read the warnings on the battery precluded him from establishing causation, explaining that "an adequate warning . . . may have prevented [the plaintiff's] injuries by alerting *a prior user of the battery* not to pound on the vent caps." *Id.* at 381 (emphasis in original). In contrast, whether the individual who installed the tire contrary to an express warning (or anyone else filling the tire between its installation and plaintiff's purchase of the pickup truck from a dealer in 2007) would have heeded a further warning to inflate the tire to a lower pressure if improperly installed calls for rank speculation, since Below himself apparently failed to check and correct for the next six years an improperly-sized tire and wheel rim despite an equally specific warning.[5]

## II. Installation on Original Equipment Wheels

### A. Disclosure of Plaintiffs' Additional Failure to Warn Theory

Defendants' motion for summary judgment presupposes that plaintiffs' failure to warn claim is premised on the Fitment Guide's lack of advice to underinflate the tire if installed on a wheel that was narrower than prescribed. This supposition seemed well-founded since it appeared to be the *only* theory for plaintiffs' expert as to a duty to warn. (Defs.' Opening Br. (dkt. #55) at 7 ("Gary Derian, Plaintiffs' alleged tire expert, has, nonetheless, identified one alleged inadequacy in the warnings Yokohama provides to tire

---

[5] The court cannot preclude the *possibility* that a warning to *check* the rim size for improper installation might have caused Below (or any of the other previous owners, including the automotive dealer who sold him the car) to replace the tire or rims, but that has never been plaintiffs' claim. Even if it were, a reasonable jury would again be left to speculate as to the impact of such a warning, if any.

purchasers.").) In their opposition brief, however, plaintiffs would now advance another theory: that "[b]ecause Yokohama sells oversize[d] tires for pickup trucks that do not fit the original equipment's rims, plaintiff's expert has opined that they should have a sticker so advising[.]" (Pls.' Opp'n Br. (dkt. #60) at 3-4.)

Despite plaintiffs' assertion that their expert offered such an opinion, Derian does not mention the need for a sticker warning anywhere in his expert report. At most, Derian states that the "285/75R16 size tire is not used on any pickup truck" to support his conclusion that "[s]ince Yokohama sells oversize tires for pickup trucks, their training and instructional materials must have detailed information for the proper fitment and inflation." (Derian Report (dkt. #70-1) at 5.) Indeed, Derian's first use of the word "sticker" is in an *unsigned*, purported "Affidavit of Gary Derian in Opposition to the Motion for Partial Summary Judgment" filed by plaintiffs on the same day they filed their brief in opposition to defendants' motion. (Aff. (dkt. #61) ¶ 3 ("The discovery to date has not demonstrated that Yokohama placed any sticker or warning on the tire to advise the purchaser or retailer that it should not be put on the accident vehicle and the original rims.").)

Accordingly, Derian's expert opinion regarding the sticker appears to have been disclosed untimely under Rule 26(a)(2), and cannot be the basis of plaintiffs' alternate sticker theory. Since this theory could arguably be pursued without expert opinion testimony, however, and the defendants have not argued waiver more generally, the court addresses its merits below.

## B. Duty to Warn

Plaintiffs acknowledge that the sticker attached to the tire "disclos[ed] a variety of information" (Pls.' Addt'l PFOF (dkt. #62) ¶ 6), but now appear to argue that it should also have warned the LT285/75R16 tire would *not* fit the original equipment wheel rims for commercially available, light pickup trucks in the United States, since a reasonable individual "would not check the extensive (over 250 page) fitment guide for each tire installation." (Pls.' Opp'n Br. (dkt. #60) at 5.) While defendants would now dispute plaintiffs' assertion that the tire does not fit on *any* original equipment wheels, their 30(b)(6) deponent could not name a vehicle that is equipped with original equipment wheels specified for the tire, other than possibly the Hummer. (Dep. of Thomas Kenny (dkt. #68) at 115:8-21, 123:21-124:17.) At least for summary judgment purposes, therefore, the court will assume the tire at issue did not fit most, if not all, original equipment wheel rims, especially light pickup trucks like Below's.

Arguably, plaintiffs' sticker warning theory is more closely analogous to the lack of a warning against pounding on the vent caps of the battery in *Tanner*, especially if plaintiffs could also show that the misapplication of the LT285/75R16 tire on convential rims was a common practice. Also, similar to *Tanner*, a reasonable jury might find that a warning on the tire sticker would have alerted the individual who installed the tires that they do not fit on most, if any, original equipment wheels, thereby preventing Below's accident. *See* 228 Wis. 2d at 381.

Even so, plaintiffs' "sticker theory" appears to have been somewhat of a moving target for the reasons already explained. Accordingly, the court will hear argument on

whether plaintiffs preserved that theory as a basis for their failure to warn claim during a *telephonic* hearing at 4:00 p.m. on February 21, 2017, currently the date and time for the final pretrial conference, which will now be held in person on February 24, 2017, at 1:00 p.m.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for partial summary judgment (dkt. #53) is GRANTED in part and RESERVED in part, consistent with this opinion.

2. Defendants' motion for leave to file a supplemental brief in support of their motion for partial summary judgment (dkt. #76) is GRANTED and plaintiffs' response to that brief (dkt. #167) is also ACCEPTED..

3. Oral argument on plaintiffs' alternative duty-to-warn theory will be held telephonically on February 21, 2017, at 4:00 p.m. Defendants are to initiate the call to the court.

4. The final pretrial conference is rescheduled to February 24, 2017, at 1:00 p.m.

Entered this 13th day of February, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge