IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA J. BELOW, by his guardian, DEBRA
BELOW, CHARLIE ELIZABETH BELOW, a
minor by her Guardian ad Litem, DANIEL A.
ROTTIER, and PATRICK JOSHUA BELOW, a
minor by his Guardian ad Litem, DANIEL A.
ROTTIER,

                Plaintiffs,

and

DEAN HEALTH PLAN, INC.,

                Involuntary Plaintiff,

and

STAR BLUE BELOW-KOPF, by her Guardian
ad Litem, TERESA K. KOBELT,

                Intervening Plaintiff,

    v.

YOKOHAMA TIRE CORPORATION, *et al.*,

                Defendants.

OPINION AND ORDER

15-cv-529-wmc

---

    This matter is scheduled for trial to begin on March 6, 2017. In advance of tomorrow's final pretrial conference, this order addresses the parties' various pending motions.

I.     **Defendants' motion to exclude expert opinion testimony from Kevin Schutz**

Defendants move to exclude opinions from plaintiffs' vocational expert, Kevin Schutz, that Below's injuries prevent him from working as a plumber, on the grounds that Schutz lacks the qualifications of an expert and that his opinions are unreliable.  A district court is responsible for ensuring that a party's proffered expert testimony is relevant and reliable.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  To be admissible under Federal Rule of Civil Procedure 702, an expert's opinion testimony must satisfy the following three-part test: (1) the witness must be qualified by knowledge, skill, experience, training or education; (2) the reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the testimony must assist the jury to understand the evidence or determine a factual issue.  *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

As an initial matter, defendants argue that because Schutz is a psychologist, he is not qualified to offer an opinion concerning the job duties of a plumber or a medical opinion about Below's physical and cognitive disabilities.  Defendants also argue that Schutz's opinion that Below can never work as a plumber again is an inadmissible, "bottom line" opinion, which fails to account for medical evidence suggesting adequate cognitive performance and the ability to do some plumbing work.  Finally, defendants argue that Schutz's opinions are not moored adequately to the facts, having failed to take into account Below's prior brain and hand injuries caused by earlier car accidents.[1]

---

[1] Defendants' motions for leave to file a supplemental brief and second supplemental brief in support of their motion (dkts. ##184, 213) will be granted, even though it largely makes the same arguments as their opening brief and does not otherwise change the result.

While plaintiffs acknowledge (as they must) that Schutz is unable to offer medical opinions of his own, they emphasize his experience as qualifying him as an expert in vocational counseling.   Given Schutz's graduate-level education in vocational rehabilitation and experience performing vocational evaluations, the court agrees that Schutz is qualified to offer expert opinion regarding Below's vocational ability.   Of course, defendants are free to point out the limits of that expertise, whether in the art of medicine or plumbing, as well as his factual assumptions.

As for the factual underpinnings of Schutz's opinion, he noted that Below *was* able to work as a plumber before the car accident at issue, despite his earlier hand injury. Schutz also relies on Below's medical record to support his finding that Below is unable to resume working as a plumber.  In resolving a *Daubert* motion, the court is not tasked with determining whether an expert's opinion is correct, but rather whether it is relevant and based on sound methodology.  *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).   Defendants are certainly free to point out portions of Below's medical records that arguably undermine Schutz's opinion, but any shortcomings in his analysis or factual assumptions are proper subjects of cross-examination and ultimately for the jury to decide, not a basis to exclude his opinions altogether.   This motion is DENIED.

## II.   Defendants' motion for relief due to spoliation of evidence

Below's pickup truck was destroyed at a salvage yard before plaintiffs filed this lawsuit.   Defendants argue that the destruction of the truck hampered their ability to defend against this lawsuit, because they were unable to evaluate, among other things, the suspension and steering systems, the seatbelt, the electronic data recorder *and* the

3

other three tires.  Asserting that plaintiffs or their "agents" sold Below's pickup truck to a salvage yard with the knowledge that it would be destroyed after inspecting it, taking photographs and preserving the failed tire, defendants move for a spoliation instruction.

A spoliation instruction is only obtainable if the proponent shows an *intentional* act or *bad faith* by the party in possession of the destroyed evidence.  *See Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013); *Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983).  With respect to plaintiffs' actions, defendants assert that:  (1) Below or his agent transferred the truck's title to the salvage yard; (2) plaintiffs "did nothing to preserve the truck, despite having located it and inspected it themselves;" and (3) plaintiffs failed to alert Yokohama that they intended to file a lawsuit against them, much less advise where the vehicle was being stored.  (Defs.' Br. Supp. (dkt. #74) at 11.) From these actions, as well as Below's receipt of $22,000 in insurance proceeds from the sale of the truck, defendants argue, plaintiffs' bad faith can be inferred.

Not surprisingly, plaintiffs' paint a much different picture in response.  Contrary to defendant's assertions, plaintiffs represent that Below's mother did *not* contact plaintiffs' counsel the day after the accident.  Instead, plaintiffs' counsel was retained about a month and a half later, on October 30, 2013.  Moreover, plaintiffs' counsel represent that *same* day, one of their investigators, Terry Tadusak, discovered that some components had already been removed from the truck, presumably by the salvage yard. Also that day, plaintiffs assert that the salvage yard agreed to the investigator's request to preserve the truck.  Several months later, in May of 2014, another of its investigators, Tom Malone, followed-up with the salvage yard to ask them to continue to preserve the

truck and to notify him about any storage charges.   Despite these efforts, plaintiffs'
counsel later "discovered" in fall of 2015 that the truck had been destroyed on October
23, 2014.

Left unexplained is how plaintiffs ended up with the single, allegedly defective tire
without preserving the other three; why other steps were not taken to preserve similar
evidence, including possible electronic evidence that must be preserved under Fed. R.
Civ. P. 37(e); and perhaps most important, why plaintiffs waited another, two full years
after  the accident without notifying Yokohama of the availability of this piece of key
evidence, despite knowing that it was the focus of plaintiffs' liability claims within
months of the accident itself.   These questions are all the more troubling because
plaintiffs were represented by a sophisticated personal injury law firm, who know full well
of their duty to maintain evidence relevant to likely litigation, to provide notice of a
possible claim, and notice of "the existence of evidence relevant to that claim."   *Am.
Family Mut. Ins. Co. v. Golke*, 319 Wis. 2d 397, 768 N.W.2d 729, 732 (2009).   Plus,
Malone's letter to the salvage yard presents many more questions than it answers, as to
timing and whether any agreement ever existed with the salvage yard.

Based on this record, plaintiffs' counsel certainly should have taken additional
steps to ensure that the truck (or at least potentially key evidence) was preserved, as well
as notified likely defendants timely of the opportunity to inspect it.   The failure to do so
falls somewhere between negligence and gross negligence, but perhaps short of bad faith
or intentional conduct requiring an adverse inference instruction.   Even so, defendants
persuasively argue that the absence of this evidence should at minimum preclude

plaintiffs from using it as a sword, even if defendants cannot use it as a shield.[2] Therefore, the defendants motion is GRANTED to the extent that (1) defendants may explore how information from an inspection of Below's truck could have affected the experts' opinions at trial; and (2) plaintiffs may not argue that defendants or their experts failed to explore or prove something if prevented from doing so by plaintiffs' negligence in preserving evidence.  Defendants' motion is otherwise RESERVED pending a further proffer and argument at the final pretrial conference, including defendants request for a spoliation instruction.

III.    **Motions** *in Limine*

A. **Defendants' motions**

1, 2 & 3. **Plaintiffs should be barred from presenting evidence about or otherwise referring to (1) dissimilar tires; (2) dissimilar accidents; and (3)  unrelated adjustments and all claims and lawsuit data**

Lacking in specifics, defendants' first, second and third motions *in limine* seek to broadly exclude evidence they argue is not sufficiently related to plaintiffs' design and manufacturing defect claims in this case, including evidence about: (1) tires with a specification other than the specific tire at issue in this case; (2) other lawsuits and warranty claim adjustments; and (3) other accidents.   Citing NHTSA regulations, defendants argue that tires sufficiently similar to the Yokohama tire that failed must share the same "article number (E3523) or specification," and so evidence related to any

---

[2] Defendants' motion for leave to file a reply brief (dkt. #209) will be granted.  The court has reviewed the proposed brief (dkt. #210),but for the multiple reasons discussed above, is not persuaded that it supports a different result.

other tires should be excluded.  (Defs.' Mots. (dkt. #124) at 6.)  Defendants further assert that there is no other Yokohama tire that is "related" to the tire at issue because it has no "common green tire," defined by 49 C.F.R. § 579.4(c) as a tire produced to the same internal specifications.  (Defs.' Supp. Br. (dkt. #143) at 4.)  Even more generally, defendants conclude, "the evidence that should be excluded includes, but is not limited to, evidence regarding other tires manufactured to other articles or specifications, including tires manufactured by Yokohama Rubber Company, and at other facilities during other time periods, and/or testing data relating to tires other than the tire at issue in this case."  (Defs.' Mots. (dkt. #124) at 6.)

Defendants then make similar, general arguments with respect to other broad categories of evidence, asserting that because no other lawsuit has been filed against Yokohama concerning a tire with the same specification as the tire here, plaintiffs cannot show that any other lawsuit is sufficiently similar, adding that there is no "pending claim against Yokohama which pertains to the subject tire's specifications."  (Defs.' Supp. Br. (dkt. #143) at 12.)  As to evidence of adjustment data, defendants argue that adjustments are not probative of the existence of any defect, because employees of retailers who make the adjustments do not determine whether a defect caused the need for an adjustment and because they are made for various reasons related to customer service purposes.

In response, plaintiffs argue that defendants' motions misapply the standard of similarity required by the case law for evidence to be admissible.  In particular, plaintiffs argue that other tires, accidents, lawsuits and adjustments need not be identical.  Instead,

citing *Mihailovic v. Laatsch*, 359 F.3d 892 (7th Cir. 2004), plaintiffs assert that "other accidents are generally deemed admissible both to prove the existence of a defect or danger in a location or a product *and* to show that the defendant had notice of the defect or danger, so long as the other accidents are 'substantially similar' to the accident at issue in the litigation." *Id.* at 908 (citations omitted) (emphasis added).

So far, so good, except that the examples of admissible evidence of other accidents that plaintiffs proffer do not match their defect claims, particularly given the guidance from *Mihailovic* that "[t]he particular defect or danger alleged by the plaintiff will serve to define the degree of commonality that there must be among the accidents in order for them to be considered substantially similar." *Id.* Specific examples of other accident evidence plaintiffs intend to offer are:

- Evidence of other cases where a G051 tire suffered tread separation and tire failure will be used to prove notice of danger with belt and tread separation in tires [that] are all substantially similar construction, lacking nylon cap plies.

- Adjustment data (warranty claims where the tire failed) related to G051 tires identifying occasions where the tires have encountered a tread separation.

(Pls.' Opp'n Br. (dkt. #159) at 5.)

In this case, plaintiffs claim that a manufacturing defect caused the tire to have "poor adhesion" and also that a design defect (the lack of a nylon cap ply) did not permit Below enough time to recognize the tire failure and safely bring his truck to a stop. (*Id.* at 3-4.) In contrast to plaintiffs' evidence that "Yokohama uses nylon cap plies in other similar tire models" (Pls.' Opp'n Br. (dkt. #159) at 12), which may be directly relevant

to their design defect claims, generic evidence of other accidents involving "tread separation" are not sufficiently moored to their defect claims to be substantially similar.

Without a more detailed explanation of what evidence regarding other tires, accidents, lawsuits and adjustments plaintiffs intend to offer as substantially similar to their *specific* design and manufacturing defect claims, plaintiffs have not shown that evidence is admissible.  Accordingly, defendants' first three motions are RESERVED pending a further proffer by plaintiffs at the final pretrial conference.

**4.    Plaintiffs should be barred from referring to any information as confidential**

Without explanation, defendants further assert that "[a]ny comments about 'confidentiality' are not relevant to any issue in this case, and the comments would be highly prejudicial to Yokohama."  (Defs.' Mots. (dkt. #124) at 9.)  Because the court cannot conclude that any reference from plaintiffs to information as confidential would be prejudicial to Yokohama in all circumstances,[3] this motion is DENIED without prejudice to a further explanation from defendants as to its concern at the final pretrial conference.

**5.    Plaintiffs should be barred from presenting evidence about or otherwise referring to alleged manufacturing defects that took place (a) at any other Yokohama facility than the Salem plant or (b) at any other time than the relevant period**

---

[3] This request is particularly odd since the jury will need to be instructed on non-disclosure of certain confidential information they may be shown.

As plaintiffs point out, this motion is another variation of defendants' first through third motions. Accordingly, the court will also RESERVE on this motion pending argument at the final pretrial conference.

**6.    Plaintiffs should be barred from presenting evidence about, or otherwise referring to evidence of, any recalls, replacement programs or NHTSA investigations**

This sixth motion is also similar to defendants' first, second and third motions, with the possible exception that plaintiffs should be precluded from cross-examining defendants' expert witnesses about their involvement in or opinions regarding recalls of other tires. Moreover, even the exception requires an explanation from plaintiffs as to what evidence of bias they intend to elicit from defendants' experts at trial based on their work on other matters. Accordingly, it is also RESERVED in its entirety.

**7.    Plaintiffs should be barred from referring to any alleged duty or failure to recall**

Defendants move to exclude plaintiffs from arguing that Yokohama was negligent in failing to recall the tire at issue in this case or that Yokohama made fraudulent representations that the tire complied with NHTSA standards. In response, plaintiffs confirm that they will not make those arguments in claiming that defendants' warnings were inadequate. Accordingly, this motion is GRANTED.

**8.    Plaintiffs should be barred from referring to any post-sale duty to warn, retrofit or recall**

This motion is GRANTED as unopposed.

9. **Plaintiffs should be barred from presenting evidence about or otherwise referring to post-manufacture design changes or any other subsequent remedial measures**

Although plaintiffs point out that certain statements, such as an employee's "acknowledgement that there was a problem which needed fixing," are not excluded by Rule 407, and are admissible as admissions of an opposing party, *Nationwide Agribusiness Insurance Co. v. Meller Poultry Equipment, Inc.*, Case No. 12-C-1227, 2016 WL 2593935, at *9 (E.D. Wis. May 5, 2016), they do not oppose this motion.   Therefore, it is GRANTED.   Should plaintiffs believe that this or another exception actually applies to a subsequent remedial measure under Rule 407, they should proffer it at the final pretrial conference or at a convenient time outside the presence of the jury without causing a delay in the trial.

10. **Plaintiffs should be barred from referring to a "nylon cap ply" without reference to an actual design specification**

Defendants move to preclude plaintiffs from using the generic term "nylon cap ply" unless they provide a more detailed specification of the "width, application and/or placement of the nylon in a particular tire."  (Defs.' Mots. (dkt. #124) at 14.)  Since this motion is wrapped up in the *Daubert* motion as to Derian, the court will RESERVE until addressing that motion further at the final pretrial conference.

11. **Plaintiffs should be barred from presenting evidence about, or otherwise referring to, tire design or manufacturing defect theories unrelated to the opinions advanced by the experts**

Defendants move to exclude "any reference to tire design or manufacturing defect theories proposed by Plaintiffs for which there is no supported proof of causation to the

tire's failure." In so moving, defendants explain that "[t]he evidence to be excluded includes, but is not limited to, the opinions, report or testimony by Plaintiffs' designated tire expert, Gary Derian, regarding the Subject Tire's inner liner."  (Defs.' Mots. (dkt. #124) at 14-15.)  Plaintiffs do not oppose defendants' motion to the extent that they are only moving to exclude evidence or argument that the tire's inner liner was too thin, since Derian has withdrawn his opinion regarding that aspect of the tire.  But because defendants' motion is worded to exclude evidence more broadly, it is DENIED without prejudice to a further explanation as to the nature of defendants' remaining concern, if any, at the final pretrial conference.

12. **Plaintiffs should be barred from presenting evidence about, or otherwise referring to, undisclosed testing, data or supporting materials**

Again, defendants' motion to preclude plaintiffs from referring to "undisclosed literature, studies, tests, data, or other supporting material" is generic, but plaintiffs have confirmed that they do not intend to refer to any undisclosed materials.  Accordingly, the motion is GRANTED.

13. **Plaintiffs should be barred from referring to the condition of Below's vehicle**

This motion is RESERVED for the same reasons as defendants' spoliation motion.

14. **Plaintiffs should be precluded from offering any expert opinion not disclosed during discovery**

With respect to both sides' experts, the court will sustain objections that an expert is offering opinion or the basis for an opinion not set forth in their report or

supplemental report.  Accordingly, this motion is DENIED as moot.  **During trial, the proponent of any expert witness should be prepared to cite page and line from that expert's report or supplemental report regarding any opinion or basis for opinion solicited from or offered by that witness.**

### 15.    Plaintiffs should be precluded from offering any lay opinion regarding the cause of the tire failure or Below's injuries

As with a number of defendants' other motions *in limine*, their 15th motion is muddled, superficial and seeks a generic ruling when nuances in the facts and law require more.  To begin with, defendants cite *Smoot v. Mazda Motors of America, Inc.*, 469 F.3d 675 (7th Cir. 2006), for the general proposition that expert testimony is required to establish a tire defect under Wisconsin law, but this was not the holding in that case.  Rather, the *Smoot* court required consideration of the underlying basis for and ability of an expert *or* lay person to *know* of what they testify.  *Id*. at 679-81 (explaining when an alleged product defect may or may not require expert testimony).  The court, therefore, agrees with plaintiffs that without more specificity, defendants motion *in limine* to preclude plaintiffs from offering *any* lay opinion as to *cause* is meritless.  Indeed, it is so frivolous as to justify a monetary sanction, which the court will consider if defendants persist in any "everything but the kitchen sink" pattern of objections to trial evidence.

In response, however, plaintiffs state that they "intend to offer some lay opinion testimony from witnesses to the accident and the accident scene, some of which pertain to Mr. Below's injuries or whether he . . . could [have] survived this crash had he not been ejected from the vehicle."  (Pls.' Opp'n (dkt. #173) at 11.)  The case plaintiffs cite

in support of the admissibility of these "eyewitnesses' opinions regarding survivability of the crash" under Wisconsin law is also not on point.  In *Wingad v. John Deere & Co.*, 187 Wis. 2d 441, 523 N.W.2d 274 (Ct. App. 1994), the Wisconsin Court of Appeals affirmed the trial court's exclusion of an expert's opinion that the plaintiff would not have been ejected from his tractor had he been wearing a seat belt.  *Id.* at 457.  "Although it is well-settled law that expert testimony is required to establish a seat belt defense," the *Wingad* court explained that is not so "in cases of simple ejection."  *Id.* at 456.  In such cases, exclusion of the expert's opinion was proper because "expert testimony is not used when a matter is within the realm of ordinary experience and comprehension."  *Id*. (citing *Lukowski v. Dankert*, 184 Wis. 2d 142, 154, 515 N.W.2d 883 (Wis. 1994) (confirming award of arbitration panel whose majority "concluded that expert testimony was not necessarily required in an ejection case" and found the plaintiff causally negligent).  Thus, while plaintiffs correctly assert that "Wisconsin courts have held that ejection is an issue within the knowledge of lay people," *Wingad* does not support plaintiffs' argument that lay opinion testimony regarding whether Below "could have survived . . . had he not been ejected from the vehicle" is necessarily admissible.

In the end then, neither party has provided enough specificity for the court to provide meaningful guidance as to what lay *or* expert opinions will be allowed at trial on the issue of causation.  Defendants' motion is, therefore, DENIED without prejudice.  Both sides should give some thought to providing more meaningful proffers as to the nature of lay opinion testimony, if any, they intend to offer or oppose at the final pretrial conference.

14

16. **Plaintiffs should be barred from presenting evidence about or otherwise referring to testimony from former Yokohama manufacturing employees**

Defendants' sixteenth motion *in limine* is another motion to exclude a broad range of evidence without any context or specificity.   As a result, this motion is DENIED without prejudice to further explanation from defendants at the final pretrial conference.

17. **Plaintiffs' counsel should be barred from referring to plaintiffs as "victims"**

This motion is GRANTED as unopposed.

18. **Plaintiffs should be barred from referring to the details of Below's injuries during the liability phase of trial**

In response to defendants' motion, plaintiffs argue that the "nature and extent" of Below's injuries and disability caused by the accident are appropriate subjects in the liability phase, because otherwise the jury may draw adverse inferences against plaintiffs regarding Below's ability to drive, maintain his truck and remember things.   To the extent defendants meant to include these in their motion (suggested by the motion's text, but not the heading), the court agrees.   Plaintiffs further acknowledge that "evidence of injuries and damages must not be belabored."   The court is uncertain what that means, since a few declarative sentences will suffice to describe the nature and extent of injuries, meaning there is to be no "laboring" to describe these injuries, much less "belaboring," and there will *no* mention of damages during the liability phase of trial.   Accordingly, this motion *as titled* is GRANTED; plaintiffs may *not* go into the *details* of Below's injuries, which shall await the damages phase of trial, if any.

### 19.    Plaintiffs should be barred from presenting evidence about or otherwise referring to hearsay statements from doctors

Defendants move to exclude, on hearsay grounds, any testimony from lay witnesses regarding what they "heard from a doctor about the necessity of past or future care, the reasonableness of past or future expenses, or Plaintiffs' past, present or future medical prognosis." (Defs.' Mots. (dkt. #124) at 20.)  With the clarification that their vocational expert, Kevin Schutz, may testify about medical evidence on which he relied in reaching his opinions, plaintiffs do not oppose this motion.  Accordingly, it, too, is GRANTED.

### 20.    Plaintiffs should be barred from referring to undisclosed medical evidence

Defendants move to exclude plaintiffs' medical evidence "that was not properly disclosed during discovery in response to requests," identifying in particular "any new opinions offered by Dr. Elizabeth Davis after 2013, and any documents in support of these opinions . . . because no such opinions or documents were disclosed to Defendants by the discovery cut-off date of January 20, 2017."  (Defs.' Mots. (dkt. #124) at 20.)  Defendants also move to preclude plaintiffs from offering any "expert evidence" about Below's future medical costs and any testimony attempting to value pain and suffering in dollars.

In response, plaintiffs state that they do not intend to offer testimony as to the latter categories.  They also assert that exclusion of testimony regarding Dr. Davis is unwarranted because "the parties agreed to extend the discovery deadline to February 17, 2017, and defendants have scheduled the deposition of Dr. Davis for February 13, 2017.

Whatever private agreement the parties may or may not have had, plaintiffs do not cite to any docket entry reflecting its nature or the court's approval of those deadline extensions, much less extending disclosure obligations under Rule 26.  Nevertheless, the court will RESERVE on this motion until the final pretrial conference.

21. **Plaintiffs should be barred from presenting evidence about or otherwise referring to Joshua Below's guardianship during the liability phase of trial and without laying a proper foundation**

The portion of defendants' motion demanding plaintiffs "first establish[] that the statutory requirements for the continuation of the guardianship, and any required finding as to Mr. Below's impairment, have been met at the time of trial" is moot, since the basis for a state guardianship proceeding is of no relevance to the issues before the jury in either phase of this trial.  At the same time, the court agrees that "evidence about" the guardianship has no relevance in the liability phase of trial.  Finally, the other portion of defendants' motion, seeking to preclude plaintiff from referencing Debra Below as the guardian of Joshua Below during the liability phase of trial, is DENIED, since this is in fact her current legal status as reflected in the case caption.  Should defendants want a curative instruction as to the meaning of that status, they may certainly propose one -- although that would seem ill-advised since it would only call attention to an irrelevant proceeding.  Accordingly, the motion is GRANTED.

22. **Plaintiffs should be barred from presenting evidence about or otherwise referring to scrapbook-type evidence**

This motion is GRANTED as unopposed.

23. **All witnesses, including experts, should be excluded from the courtroom when they are not testifying**

The court's general practice is to exclude all lay witnesses from the courtroom until they have completed their testimony, while allowing experts to remain. The court sees no reason to depart from that practice here, notwithstanding plaintiffs' muddled argument that because defendants will offer expert testimony from designated Yokohama officers or employees who supposedly cannot be excluded from the courtroom under Federal Rule of Evidence 615. Accordingly, this motion is GRANTED as to lay witnesses and DENIED as to experts. Further, defendants are advised that they may designate *one* corporate representative to be excepted from this rule.

24. **Plaintiffs should be barred from referring to Yokohama's parent company as Japanese or the nationality of Yokohama's employees**

Plaintiffs argue that there is evidence in the record that at least some design decisions were made in Japan, and so defendants' motion is overbroad. The court disagrees. The motion is, therefore, GRANTED since *where* design decisions were made has no relevance to the issues in this case.

25. **Plaintiffs' counsel should be barred from referring to plaintiffs as locals or making other references to Yokohama's counsel**

This motion is GRANTED as unopposed.

26. **Plaintiffs should be barred from referring to Yokohama's discovery practices**

In another generic motion, defendants seek to exclude any reference to documents or information that plaintiffs requested but Yokohama did not provide. As the court

agrees that any claimed discovery deficiency, including claimed production failures, is for the court, not the jury, this motion is GRANTED.

**27. Plaintiffs should be precluded from demanding that Yokohama produce any document, stipulate to any fact, or make any agreement before the jury**

The court will not tolerate *any* colloquy between the parties on the record during trial, much less with the jury present, so this motion is DENIED as moot.

**28. Plaintiffs should be barred from referring to Yokohama's wealth, net worth, or ability to pay**

Plaintiffs do not oppose this motion as to the liability phase of the trial, and so it is GRANTED.

**29. Plaintiffs should be barred from referring to any liability insurance or indemnity agreement**

This motion is also GRANTED as unopposed.

**30. Plaintiffs should be precluded from appealing to the jurors' self-interests or the community's interests**

On the basis that attorneys enjoy wide discretion in crafting closing argument, plaintiffs oppose defendants' motion to preclude argument, whether explicit or implicit, that the jurors should decide the case based on their self-interest or the interest of the community.  Because any argument as to the jury's self-interest would violate the "golden rule," and the court is unaware of a basis for counsel to discuss the community's larger interests in this case, the motion is GRANTED without prejudice to plaintiffs' counsel making an *advance* proffer outside the presence of the jury.

19

**31. Plaintiffs should be precluded from suggesting that their lawsuit was brought for the purpose of enhancing consumer safety**

Plaintiffs raise the same objection to this motion that they raise with respect to defendants thirtieth motion *in limine*, and so this motion is GRANTED for the same reasons and terms.

**B. Plaintiffs' motions**

**1. Defendants should be barred from presenting evidence about or otherwise referring to issues between the Below family and Joshua Below's ex-wife**

Plaintiffs move *in limine* to exclude, as irrelevant and unduly prejudicial, evidence of the "acrimonious" relationship between Below, his family and his ex-wife, as well as evidence of disputes regarding the "placement" of his ex-wife's daughter, intervenor plaintiff Star Blue Below-Kopf. In response, defendants argue that evidence of Below's relationship with his ex-wife is relevant to his relationship with intervenor plaintiff and, therefore, her claim for damages based on a loss of companionship. Because the court cannot conclude that all of the evidence plaintiffs seek to exclude is not relevant to damages, this motion is GRANTED as to the liability phase and RESERVED pending a proffer from defendants before the damages phase of trial. The court assumes that Ms. Below-Kopf, her guardian and counsel will not be at counsel table for the liability phase of trial.

2.     **Defendants should be barred from presenting evidence about or otherwise referring to collateral source payments**

In response, defendants explain that they do not oppose this motion to the extent that plaintiffs seek to exclude evidence barred by *Leitinger v. DBart, Inc.*, 2007 WI 84, 302 Wis. 2d 110, 736 N.W.2d 1.  Accordingly, the motion is GRANTED with prejudice as to the liability phase and without prejudice as to the damages phase, subject to defendants making an advance proffer as to any evidence they would present during the damages phase as falling outside the *Leitinger* bar.

3.     **Defendants should be precluded from presenting any new witnesses or new evidence regarding design and construction**

Plaintiffs' third motion is difficult to parse, but they essentially: (1) seek to exclude all testimony from Thomas Griffing, because he was not listed by defendants as a witness they intend to call at trial until January 25, 2017; and (2) seek to preclude defendants from offering "new testimony or evidence" regarding nylon cap plies, on the basis that defendants failed to respond appropriately to discovery requests about that subject.

With respect to the first portion of plaintiffs' motion, defendants argue that plaintiffs have been sufficiently aware of Griffing since November of 2015, when defendants filed and served his affidavit, which included his title as Yokohama's Manager of Corporate Quality Assurance, in support of Yokohama's motion for a protective order. Defendants add that plaintiffs were also familiar with Griffing because "he attended, and was introduced on the record, as Yokohama's representative at each of the Rule 30(b)(6) depositions taken by Plaintiffs," as opposed to being offered as a 30(b)(6) witness.

(Defs.' Opp'n Br. (dkt. #174) at 2.)  Even if plaintiffs have been aware of Griffing, his title and his job responsibilities throughout this litigation, however, defendants have not established that they knew or should have known that he was in possession of non-privileged information relevant to this lawsuit, much less that defendants intended to call him as a witness at trial or the subjects on which he would testify.

Moreover, defendants cite nothing in the record in support of their assertion that "Yokohama timely supplemented its Rule 26(a)(3) disclosures with information regarding Mr. Griffing in accordance with the Court's Pretrial Order." (*Id.* at 3.)  Indeed, absent timely inclusion of Griffing's name in defendants' original or supplemental Rule 26(a)(1)(A)(i) disclosures, or designation of defendants' actual *witness* for some of the subjects designated in its' Rule 30(b)(6) notices, his addition as a possible trial witness was untimely in any event.  Fed. R. Civ. P. 26(e)(1)(A) (duty to supplement Rule 26(a) notice timely); 37(e)(1) (barring use of undisclosed witness testimony at trial). Accordingly, this part of plaintiffs' motion is GRANTED.

Plaintiffs' explanation as to the grounds for or import of the remainder of their motion is poor at best, but essentially they argue that any "new" evidence regarding nylon cap plies should be excluded as a discovery sanction because defendants provided responses that were too circumscribed and failed to supplement those responses timely. More specifically, plaintiffs explain in their motion that when they earlier objected to defendants' responses as inadequate, defendants "supplemented their responses, promising further information," in February of 2016, but did not actually supplement

until January 20, 2017, and even then, did so inadequately.  (Pls.' Br. Supp. (dkt. #137) at 4.)

Plaintiffs would explain away their failure to alert the court as to the claimed deficiencies in defendants' discovery responses any earlier than the eve of trial by arguing that they had a right to "rely on defendants' promise of proper supplementation" in February of 2016.  (*Id.* at 5.)  The notion that plaintiffs could wait a full year before complaining about a failure to supplement timely is frankly silly.  They also argue that even absent an earlier Rule 37 motion, it is within the court's inherent powers to sanction defendants for their discovery misconduct.  Were there any evidence of actual misconduct, this argument might have traction, though little since plaintiffs again should have sought timely relief from the court.

This is not to say that defendants face no consequence for apparently narrowly defining the scope of their discovery responses.  Rather than look to Rule 37, however, the relief again lies in Rule 26(a)(1), albeit in subsection (1)(A)(ii), dealing with disclosure of documents, instead of (1)(A)(i), dealing with witnesses.  If this so-called "new evidence" was not timely included in the original or supplemental disclosures under Rule 26, or otherwise produced during discovery, defendants may not offer it affirmatively at trial.  Accordingly, plaintiffs' motion is GRANTED without prejudice to defendants demonstrating timely disclosure of a witness or document, or that the failure to timely disclose or supplement was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).

### 4.    Defendants should be barred from presenting evidence about or otherwise referring to a lack of prior accidents or litigation

On the reverse side of the same coin as defendants' motions *in limine* to preclude evidence of other accidents or litigation involving other tires, plaintiffs move to preclude defendants from offering "evidence that there has been no other litigation as to the specific size and type of tire involved in this suit . . . and/or that they are not aware of any prior similar accidents involving the subject tire." (Pls.' Br. Supp. (dkt. #138) at 5.) The grounds for plaintiffs' motion are that: (1) defendants cannot establish a foundation for such evidence because they do not track similar accidents, "other than through warranty claims"; and (2) defendants "unfairly failed to fully respond to discovery relating to this issue." (*Id.* at 2.)

Both of these grounds raise similar arguments as plaintiffs raised with respect to their third motion *in limine*, and the court rejects them for similar reasons. In particular, plaintiffs fail to explain why they did not file a motion to compel discovery earlier in this litigation, and defendants point out in response to plaintiffs' motion that they not only disclosed how they monitor lawsuits outside of the warranty process, but also identified pending lawsuits involving tires other than the specific LT Geolander H/T-5, model G051, 8 ply, load range D tire that failed here. In support of the latter assertions, defendants cite specific testimony from its Rule 30(b)(6) representative Thomas Kenny as to efforts to track similar tire failures through the warranty process, as well as through litigation as reported by Yokohama's legal department. While plaintiffs argue those efforts were inadequate, that would appear to go to weight, not admissibility. Accordingly, this motion is DENIED as to any claimed failure by defendants as to

discovery responses and RESERVED as to the foundation for defendants' offering this evidence.

5.  **Defendants should be precluded from presenting testimony from Jeffrey Wheeler and Chad Thompson regarding seat belt usage**

In their lengthy, fifth motion *in limine*, plaintiffs argue that defendants' expert Jeffrey Wheeler should be precluded from opining that Below was not wearing his seatbelt and that a seatbelt would have reduced his risk of serious injury for various reasons. As an initial matter, defendants demonstrate persuasively that Wheeler is qualified to offer expert opinions on injuries caused by car accidents, including opinions regarding seatbelt usage. Plaintiffs argue primarily that Wheeler's testimony would not be helpful to the jury, since expert opinion testimony is not necessary to establish a seat belt defense under Wisconsin law when the plaintiff is ejected, but Wheeler's testimony is particularly relevant here given that plaintiffs *dispute* whether Below was wearing his seatbelt.

Most of the other criticisms plaintiffs raise about Wheeler's analysis goes to the weight his opinions should receive, which are proper subjects for cross-examination rather than cause for exclusion under Federal Rule of Evidence 702 and *Daubert*. There are two caveats on which the court RESERVES. First, plaintiffs' motion suggests that Wheeler never filed a report opining on whether Below wore a seat belt, although he did express this opinion during his deposition. If so, the court will hear argument as to the timeliness of this opinion or its basis. The second caveat concerns Wheeler's apparent reliance on Wisconsin State Trooper Chad Thompson's opinion as to whether or not

25

Below was wearing a seat belt.  Ultimately, Wheeler may not be allowed to refer to any such opinion, unless the court allows Thompson to opine as such at trial.  The remaining portion of plaintiffs' motion as to Trooper Chad Thompson is addressed below with respect to plaintiffs' next motion.  Otherwise, plaintiffs' motion with respect to Wheeler is DENIED.

### 6. Defendants should be precluded from presenting testimony from Chad Thompson regarding tire issues

In response to plaintiffs' fifth and sixth motions *in limine*, defendants concede that Thompson is not an expert on accident reconstruction, but argue he is qualified to offer lay opinion testimony about: (1) whether Below was wearing a seatbelt; (2) whether the tire failed not because of a defect, but because it was in poor condition; and (3) whether the tire failure caused Below to crash.  The court generally disagrees.

Although Thompson can testify as to what he *observed* about the seatbelt in Below's truck, defendants do not make a sufficient proffer as to why Thompson's lay opinion that Below was actually wearing a seatbelt is any more rational, helpful or better informed than the jury's under Federal Rule of Evidence 701, except for his specialized knowledge which is precluded under Rule 701(c).  Similarly, Thompson can describe what he personally observed about the condition of the failed tire, but he is in no better position to opine on the *cause* of the tire's failure.  Even so, Thompson's opinion that he "would not drive a vehicle equipped with [that] tire[]" *is* both rationally based and helpful in clearly understanding his lay opinion as to the condition of the tire, and therefore permissible under Rule 701.  Finally, Thompson's general observation that in

his experience, most tire failures do not result in injury, is unlikely to shed light on whether the tire failure here caused Below to lose control of his truck, especially since the parties dispute the scientific and technical evidence with respect to that factual question. Moreover, there is a risk that Thompson's Rule 701 opinion might be unfairly confused with expert opinions under Rule 702 on this subject given his position as a state trooper. Accordingly, plaintiffs' sixth motion and the part of their fifth motion concerning Thompson are GRANTED in part and DENIED in part as set forth above.

> ### 7.    Defendants should be precluded from presenting evidence from Joseph Grant regarding tire overinflation or negligent usage

As defendants point out in response, plaintiffs' use unclear and inconsistent language as to what testimony they seek to preclude defendants' expert Joseph Grant from offering at trial.  Given this egregious lack of clarity, whether intentional or not, the motion is GRANTED as to the title above only, about which Grant neither has opined nor does he intend to opine at trial.

## IV.    Defendants' motion to maintain confidentiality of trade secrets

In this motion, defendants propose a variety of different means to protect trade secret and confidential information from being disclosed at trial.  Federal Rule of Civil Procedure 26(c)(1)(G) provides that upon a showing of "good cause," the court may enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Consistent with the court's practice, the court will advise the jury that they may be

27

shown information that they cannot discuss both during and after trial, except in their actual deliberations as a jury. In addition, by the Friday before trial, plaintiffs and defendants should exchange a list of information and exhibits that when displayed on the screen for the jury, will require the TV in the courtroom facing the public to be turned off. Similarly, for any specific, highly confidential information identified in those documents about which the parties will need to have a live witnesses testify, disclosure of that information in open court shall be avoided by asking the witness to mark information on the document electronically, which will be visible to the jury but not the gallery. Alternatively, the parties may agree on some limited redaction of confidential information contained in exhibits to be offered at trial for public consumption.

The court will not order all confidential exhibits admitted at trial to be sealed at this time, but the parties may identify specific exhibits or portion of exhibits they seek to maintain under seal. Additionally, the practice of the court is to allow the parties 30 days after trial transcripts are docketed to request that portions be sealed and that the transcripts be made public only after appropriate redactions. The parties should, however, be aware that a strong presumption of disclosure will apply for any portion of the trial not formally closed to the public, other than those exhibits contemporaneously removed from public viewing. Moreover, third parties who can demonstrate a legitimate need for trial transcripts before the 30-day period elapses may move the court for expedited consideration. Finally, any ruling upholding the sealing or redaction of any portion of the record by this court will be subject to further, exacting scrutiny by the Seventh Circuit Court of Appeals. Accordingly, this motion is GRANTED in part and

DENIED in part, subject to any questions about confidential information that the parties may raise at the final pretrial conference.

## ORDER

IT IS ORDERED that:

1) Defendants' motion for relief due to spoliation of evidence (dkt. #72) is GRANTED in part and RESERVED in part.

2) Defendants' motion to maintain confidentiality of trade secrets (dkt. #102) is GRANTED in part and DENIED in part as set forth in this opinion.

3. Defendants' motion to exclude testimony from Kevin Schutz (dkt. #122) is DENIED.

4) Defendants motions *in limine* (dkt. #124) are GRANTED in part, DENIED in part and RESERVED in part as set forth in this opinion.

5) Plaintiffs' motions *in limine* (dkt. ##125, 126, 127, 128, 130, 131, 132) are GRANTED in part, DENIED in part and RESERVED in part as set forth in this opinion.

6) Defendants' motions for leave to file supplemental and second supplemental briefs in support of their motion to exclude testimony from Kevin Schutz (dkts. #184, 213) are GRANTED.

7) Defendants' motion for leave to file a reply brief in support of their motion for spoliation (dkt. #209) is GRANTED.

Entered this 27th day of February, 2017.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge