IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA J. BELOW, by his guardian, DEBRA
BELOW, CHARLIE ELIZABETH BELOW, a
minor by her Guardian ad Litem, DANIEL A.
ROTTIER, and PATRICK JOSHUA BELOW, a
minor by his Guardian ad Litem, DANIEL A.
ROTTIER,

                    Plaintiffs,

and

DEAN HEALTH PLAN, INC.,

                    Involuntary Plaintiff,

and

STAR BLUE BELOW-KOPF, by her Guardian
ad Litem, TERESA K. KOBELT,

                    Intervening Plaintiff,

      v.

YOKOHAMA TIRE CORPORATION, *et al.*,

                    Defendants.

OPINION AND ORDER

15-cv-529-wmc

---

This opinion addresses the remaining issues raised by defendants' *Daubert* motion seeking to exclude specific testimony from plaintiffs' tire design and manufacturing expert, Gary Derian, on which the court has reserved in part (dkt. #69), as well as addresses the parties' supplemental briefing on defendants' 11th motion *in limine* (dkt. #124). In its first opinion on defendants' *Daubert* motion, the court found that Derian was qualified as an expert to offer opinion testimony as to design and manufacturing

defects in light truck tires under Federal Rule of Evidence 702 and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  (2/21/17 Op. & Order (dkt. #207).)  Pending a proffer from plaintiffs and further argument from the parties at the final pretrial conference on February 28, 2017, however, the court reserved on whether to exclude Derian's opinions that:  (1) the tire on plaintiff Joshua Below's vehicle was defectively designed because it lacked a "nylon cap ply"; and (2) the tire was manufactured defectively because of contamination and, consequently, poor adhesion in the rubber layers of the tire.  As to each, the court gave plaintiffs an opportunity to provide a supplemental proffer as to the basis for Derian's opinions under the standards established by Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Having considered plaintiffs' proffer and the parties' argument at the final pretrial conference, as well as additional briefing provided by the parties after that conference, the court will permit Derian to offer testimony as to the potential benefits of a full nylon cap ply design and the use of full nylon cap plies in the tire industry, as well as his opinion that the tire was manufactured defectively, but his ultimate opinion that the full nylon cap ply was a reasonable alternative design to the use of two nylon cap strips will be excluded both because he has provided no basis in his report to support his opinion that the design could be incorporated on a cost effective basis or would have prevented the accident in this case, both as required by Fed. R. Civ. P. 26(a)(2)(B)(i), (ii) and (iii), Fed. Evid. R. 702 and *Daubert/Kuhmo*.

As for the parties' arguments and additional briefing invited by the court as to defendants' 11th motion *in limine* to exclude Derian's opinion that a manufacturing

defect in the curing process could have caused the tire to fail, the court will also deny that motion. (Dkt. #124.) Finally, based on the court's ruling on defendants' *Daubert* motion, the court will deny defendants' 10th motion *in limine*.

OPINION

## I.  Daubert Motion

As the court explained in its first *Daubert* opinion, a district court acts as a "gatekeeper," ensuring that proffered expert testimony is both relevant and reliable. 509 U.S. at 589. Generally, in doing so, a court should consider the following factors articulated by *Daubert*: (1) whether the expert's underlying theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential error rate; and (4) whether the theory has been "generally accepted" in the relevant community. *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534 (7th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94), *vacated in part on other grounds* 448 F.3d 936 (7th Cir. 2006).

The Rule 702 inquiry is not intended to be rigid, but rather should account for the particular facts in a case; nor are the *Daubert* factors intended to be definitive or exhaustive, but rather allow for the consideration of other factors offering "reasonable measures of the reliability of expert testimony." *Kuhmo Tire Co*, 526 U.S. at 150-52. Those other factors that may be appropriate for a Rule 702 analysis include: (5) whether maintenance standards and controls exist; (6) whether the testimony relates to research conducted independently of this litigation or is developed for purposes of testifying; (7) whether the expert extrapolated from an accepted premise to an unfounded conclusion;

3

(8) whether the expert has adequately accounted for alternative explanations; (9) whether the expert's analysis is as careful in litigation consulting as it would be in regular professional work; and (10) whether the field of expertise claimed by the expert is known to reach reliable results for similar opinions. *Fuesting*, 421 F.3d at 534-35 (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)).  Ultimately, the court is tasked with "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo*, 526 U.S. at 152.

### A.  Design Defect

In his expert report, Derian sets forth his design defect opinion that "[t]he failed tire did not contain nylon cap plies over the steel belts that were sufficiently strong to hold the tire together long enough for Below to recognize the tire failure and get off the highway safely." (Derian Report (dkt. #83) at 12.)  In support of his opinion, Derian asserts principally in his report that: (1) using circumferential nylon plies over steel belts is a "mature" technology, known and used since the 1960s; (2) nylon plies are used to strengthen steel belt edges and prevent sudden deflation in the event of tread separation; and (3) even though the failed tire was a light truck tire rather than a high speed tire, which generally used full-width nylon cap plies, the heavy belt ply of the light truck tire "creates a high centrifugal force similar to a passenger tire operating at high speeds." (*Id.* at 4.)

4

Defendants argue that Derian's design defect opinion is an unreliable, impermissible *ipse dixit* opinion that meets none of the *Daubert* factors, lacking any support from a scientific study, test result or peer-reviewed article. (Defs.' Br. Supp. (dkt. #71) at 17; Defs.' Suppl. Br. (dkt. #253) at 3.) Defendants also cite several opinions in which district courts precluded an expert from expressing design defect opinions based on an absence of nylon cap plies. As support for exclusion, these opinions generally point out the lack of test data and scientific literature comparing tires designed with and without nylon cap plies. *See Ho v. Michelin N. Am., Inc.*, No. 08-1282-JTM, 2011 WL 3241466, at *7 (D. Kan. July 29, 2011); *Moore v. The Goodyear Tire & Rubber Co.*, No. 4:10-CV-372-A, 2011 WL 2176175, at *4-5 (N.D. Tex. June 2, 2011); *Cruz v. Briedgestone/Firestone N. Am. Tire, LLC*, No. CIV 06-538 BB/DJS, 2008 WL 7618706, at *2-3 (D.N.M. Sept. 2, 2008); *McCool v. Bridgestone/Firestone N. Am. Tire, LLC*, No. 02-20969-CIV, 2006 WL 6869374, at *3-4 (S.D. Fla. Feb. 3, 2006).

In response to defendants' motion, plaintiffs make little attempt to establish that Derian's nylon cap ply design defect theory has been tested or published in a peer-reviewed article. Instead, as part of a declaration proffering factual support for Derian's opinion testimony on the morning of the final pretrial conference, plaintiffs attach two engineering articles (one apparently unpublished) for the general proposition that "all steel belts have [the] potential for failure" of tread separation due to centrifugal force, including light truck tires and high speed tires. (Decl. of Gary Derian (dkt. #226) ¶ 34.) But as best the court can tell, there has never been a dispute among the parties

that the potential for failure in radial tires exists.  Even more to the point, neither article specifies full nylon cap plies as a *solution* for rapid tread deterioration in light truck tires.

Moreover, Derian's report does not address the economic feasibility of manufacturing light truck tires with full nylon cap plies, aside from the conclusory statement that "[t]he only drawback to nylon belt edge strips or cap plies is manufacturing cost." (Derian Report (dkt. #83) at 8.)  Even the sources Derian cites for the first time in his declaration do not demonstrate the feasibility of designing light truck tires with full nylon cap plies at the time the failed tire was manufactured.  Furthermore, plaintiffs fail to identify any other Rule 702 factors that weigh strongly in support of Derian's design defect opinion.

Given these deficiencies in the methodology underlying Derian's opinion, plaintiffs have failed to establish the reliability of his ultimate opinion that manufacturing the tire with a full nylon cap ply was a reasonable alternative design, much less that it would have made an appreciable difference in the rate of the tread deterioration at the time of the accident, rendering Derian's tire defect opinions inadmissible under Rule 702.  Derian may testify as to his specialized knowledge regarding the benefit of nylon cap plies and the use of nylon cap plies in the tire industry, but plaintiffs must introduce other evidence regarding the process for and cost of manufacturing nylon cap plies in support of their strict liability and negligent design defect claims from other witnesses at trial.  *See* Wis. Stat. § 895.047 (requiring a plaintiff to establish that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the

manufacturer and the omission of the alternative design renders the product not reasonably safe" for strict liability design defect claim).

### B. Manufacturing Defect

In contrast to Derian's design opinion, plaintiffs have traced his manufacturing defect opinion to recognized methodology used by experts to identify the causes of failed tires. In his report, Derian opines that the tire that failed on Joshua Below's vehicle was manufactured defectively because "[w]hen it left the tire factory, [the] tire had poor adhesion between the first belt ply and the rubber gum strip that is applied between the belt edge and the carcass plies." (Derian Report (dkt. #83) at 6.) Derian's report explains that he came to that conclusion by performing a visual and tactile inspection of the tire, with the aid of moderate power microscopy [essentially a magnifying glass], and by ruling out other causes for the tire's failure, including impact damage or overdeflection due to underinflation, based on his examination. (*Id.* at 2, 9-11.)

The court previously rejected defendant's arguments that Derian's manufacturing defect opinion is unreliable because of the method he used to examine the failed tire and because he failed to rule out other potential causes of failure adequately. (2/21/17 Op. & Order (dkt. #207) at 13.) With respect to the methodology Derian used, the declaration plaintiffs proffered in advance of the final pretrial conference also identifies several published sources that found that characteristics of material surfaces in tires are crucial in determining the cause of their failure.

Nevertheless, defendants continue to argue in their supplemental briefing that Derian did not cite those sources in his report, nor disclose them timely under Rule 26,

but this misses their import.  Although Derian will not be permitted to refer at trial to those sources, because they were disclosed untimely, they still suffice to establish, if barely, that the *methodology* underlying Derian's manufacturing defect opinion is used by others in the relevant field of expertise, demonstrating that it satisfies one of the specific *Daubert* factors -- whether the theory has been subject to publication -- as well as additional Rule 702 factors relevant to evaluating the type of expert opinion Derian offers, including that the methodology was developed independently of this litigation and that Derian's analysis accounted for alternative explanations.  *Cf. Kuhmo*, 526 U.S. at 156 (suggesting that "visual examination and process of elimination" is generally an appropriate methodology used by tire engineers).  Accordingly, Derian's manufacturing defect opinion will not be excluded.

## II. Defendants' 10th and 11th Motions *in limine*

At the final pretrial conference, defendants explained that their eleventh motion *in limine* sought to exclude Derian from testifying that a manufacturing defect could have been introduced during the curing process of the tire, asserting that he abandoned this opinion at his deposition.  The court invited defendants to file a short brief in support of that assertion, quoting specific testimony from his deposition indicating abandonment. Having considered defendants' brief, as well as plaintiffs' response, the court agrees with plaintiffs that Derian did not affirmatively abandon his opinion that a manufacturing defect could have been caused during the curing process.

Defendants quote no question from his deposition asking him specifically about the basis of the curing opinion in his report, let alone whether he intended to abandon it. At most, Derian failed to list curing as a possible stage of the manufacturing process at which a defect may have been introduced.  Such an omission in response to general questions from defendants' counsel asking him to list causes is not enough to preclude an opinion set forth in the expert's formal, written report, particularly given that defendants' counsel chose not to ask Derian specific questions regarding his opinions about the curing process as set forth in his report.  In particular, the court declines to interpret Darian's so-called failure to take advantage of the "ample opportunity to describe an alleged curing problem that led to poor adhesion" as an implicit abandonment of his opinion.  (Defs. Suppl. Br. (dkt. #252) at 3.)  Accordingly, defendants' 11th motion *in limine* will be denied.[1]

Finally, the court will also deny defendants' 10th motion *in limine* to preclude plaintiffs from using the generic term "nylon cap ply" absent a more detailed specification of the "width, application and/or placement of the nylon in a particular tire."  (Defs.' Mots. (dkt. #124) at 14.)  Consistent with the court's rulings on defendants' *Daubert* motion to exclude Derian's design defect opinions, Derian may not offer an opinion regarding the use of a nylon cap ply as a reasonable alternative design, but he, as well as plaintiffs' counsel and other witnesses, can refer to and explain the basis of their understanding of "nylon cap plies" at trial.  Of course, defendants are free at trial to attempt to undermine plaintiffs' understanding of nylon cap plies as incomplete, as

---

[1] The court will not consider additional arguments raised in defendants' supplemental brief on topics about which the court did not invite further briefing at the final pretrial conference.

well as argue that the design of the tire without the type of nylon cap ply contemplated

by plaintiffs was neither defective nor negligent.


ORDER

IT IS ORDERED that:

1) The reserved portion of defendants' motion *in limine* to exclude specific testimony from plaintiffs' expert, Gary Derian, (dkt. #69) is GRANTED in part and DENIED in part consistent with this opinion.

2) Defendants' 10th and 11th motions *in limine* (dkt. #124) are DENIED.


Entered this 3rd day of March, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge